Erin Rose Ronstadt, SBN 028362
Kyle Shelton, SBN 027379
RONSTADT LAW, PLLC
PO Box 34145
Phoenix, AZ 85067
(602) 615-0050
(602) 761-4443 Fax
erin@ronstadtlaw.com
kyle@ronstadtlaw.com

*Attorneys for Plaintiff*

**RONSTADT LAW, PLLC**
P.O. Box 34145, Phoenix, AZ 85067
6122 N. 7th Street, Suite B, Phoenix, AZ 85014
(602) 615-0050

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

Shelley Vidal,

Plaintiff,

v.

The Lincoln National Life Insurance Company, plan insurer and administrator,

Defendant.

Case No. CV-23-01954-PHX-DJH

**AMENDED COMPLAINT**

For her claims against The Lincoln National Life Insurance. Company, plan insurer and administrator ("Lincoln"), Plaintiff Shelley Vidal ("Ms. Vidal" or "Plaintiff") alleges as follows:

**PARTIES, VENUE, AND JURISDICTION**

1. This action arises under the Employee Retirement Income Security Act of 1974, 29 U.S.C. §§ 1001 et seq. ("ERISA").

2. As an employee of Wells Fargo, Ms. Vidal was a participant of the Wells Fargo & Company Long-Term Disability Plan (the "Plan").

3. Wells Fargo is a California company headquartered in San Francisco, California.

4. The Plan is a purported ERISA benefit plan established and maintained by Wells Fargo for the benefit of its employees.

5. Lincoln is a third-party claims administrator for the Plan for short-term disability ("STD") and long-term disability ("LTD") benefits.

RONSTADT LAW, PLLC
P.O. Box 34145, Phoenix, AZ 85067
6122 N. 7th Street, Suite B, Phoenix, AZ 85014
(602) 615-0050

6. Lincoln fully insures Wells Fargo employees for long-term disability ("LTD") benefits pursuant to Policy Number GF3-850-289424-01 ("the Policy").

7. Wells Fargo is a Plan fiduciary as defined by ERISA.

8. At the time Ms. Vidal sought LTD benefits under the Plan, Lincoln administered claims for Wells Fargo under the Plan, acted on behalf of the Plan, and acted as an agent of Wells Fargo and/or the Plan.

9. Lincoln makes final decisions regarding the payment of disability benefits for the Plan and to administer the Plan.

10. Lincoln has a duty to administer the Plan prudently and in the best interests of all Plan participants and beneficiaries.

11. Ms. Vidal currently resides in Pinal County, Arizona and has been a resident of Arizona at all times since becoming a Plan participant and is a citizen of the United States of America.

12. Lincoln has its principal place of business in the state of Pennsylvania. Lincoln is a citizen of Pennsylvania.

13. Lincoln is licensed and authorized to do business in Pinal County, Arizona.

14. Lincoln resides and is found in Pinal County within the meaning of the jurisdiction and venue provisions of ERISA, 29 U.S.C. § 1132, and 28 U.S.C. § 1391.

15. This Court has jurisdiction over the subject matter of this action under ERISA, 29 U.S.C. §§ 1132(a), 1132(e)(1), and 28 U.S.C. §§ 2201-02 (declaratory judgments).

16. Venue is proper in this Court under ERISA, 29 U.S.C. § 1132(e)(1) and 28 U.S.C. § 1391(b).

RONSTADT LAW, PLLC
P.O. Box 34145, Phoenix, AZ 85067
6122 N. 7th Street, Suite B, Phoenix, AZ 85014
(602) 615-0050

## GENERAL ALLEGATIONS
### Ms. Vidal's Disability

17. Ms. Vidal suffers from multiple medical conditions, including laryngopharyngeal reflux (LPR), a condition that occurs when a muscle at the end of the esophagus does not close properly, allowing stomach contents to reflux into the esophagus and cause irritation and dysphonia. Ms. Vidal's LPR causes neck pain and severe dysphonia. Ms. Vidal's dysphonia was rates at a 25 on the Voice Handicap Index (VHI -10) and a 16 on the Glottal Closure Index (GFI). Ms. Vidal estimates that she can speak for about 15 minutes at a time.

18. Ms. Vidal also suffers from cervicalgia, gastroesophageal reflux disorder (GERD), chronic headaches, Stage 2 chronic kidney disease, and hypertension.

19. Collectively, Ms. Vidal's medical conditions prevent her from performing the material duties of her Own Occupation or Any Occupation under the Policy.

20. Ms. Vidal is under the regular care of multiple physicians.

21. Ms. Vidal became Disabled on November 16, 2021, while insured under the Policy.

22. Throughout the history of her claims, Ms. Vidal has repeatedly submitted proof of loss corroborating her Disability at Lincoln's behest.

23. To be eligible for LTD benefits, Ms. Vidal must meet the definition of "Disabled" and "Disability" as they are defined in the Policy.

24. Under the Policy, "Disabled" means:

i. That during the Elimination Period and the next 24 months of Disability the Covered Person, as a result of Injury or Sickness, is unable to perform the Material and Substantial duties of [her] Own Occupation; and

ii. Thereafter, the Covered Person is unable to perform, with reasonable continuity, the Material and Substantial Duties of Any Occupation.

25. The Policy defines "Own Occupation" as "the Covered Person's occupation that [she] was performing when [her] Disability or Partial Disability began. For the purposes of determining Disability under this policy, Lincoln will consider the Covered Person's occupation as it is normally performed in the local economy."

26. The Policy defines "Any Occupation" as "any occupation that the Covered Person is or becomes reasonably fitted by training, education, age, physical and mental capacity."

27. Ms. Vidal has, at all times since the date her Disability began, been eligible for LTD benefits due to her inability to perform the duties of her Own Occupation or Any Occupation.

28. Ms. Vidal worked as a telephone Customer Service Representative for Wells Fargo.

29. Lincoln approved Ms. Vidal's STD claim and began paying benefits.

30. On April 14, 2022, Lincoln nurse Sharon H. reviewed the claim. Nurse Sharon stated that Ms. Vidal was disabled 11/16/21-4/11/22 for a surgical procedure to her nose, uvula, and soft palate. Nurse Sharon concluded, "Beyond 4/11/22, updated ENT notes and diagnostic workup would be needed to determine ongoing restrictions. Voice therapy progress reports would also be helpful."

31. Lincoln sent letters to Ms. Vidal's treating providers requesting that they complete a restrictions form. The form did not include any questions about Ms. Vidal's speech or ability to talk.

32. Ms. Vidal submitted a letter from Jennifer Hayashi, SLP, stating that a voice evaluation and videolaryngostroboscopy (VLS) were performed on March 31, 2022, and Ms. Vidal was found to have bilateral true vocal fold atrophy. Ms. Hayashi recommended Ms. Vidal minimize vocal demands and complete a course of vocal therapy.

33. In a letter dated May 3, 2022, Lincoln informed Ms. Vidal that her disability claim had be sent to the LTD department for evaluation.

**RONSTADT LAW, PLLC**
P.O. Box 34145, Phoenix, AZ 85067
6122 N. 7th Street, Suite B, Phoenix, AZ 85014
(602) 615-0050

34. Ms. Vidal exhausted her STD benefits on May 16, 2022.

35. In a letter dated July 14, 2022, Lincoln denied Ms. Vidal's LTD claim for her alleged failure to meet the definition of Disability under the Plan (the "Denial").

36. Lincoln's denial of Ms. Vidal's disability claim corresponds with the change in the payor of benefits from Wells Fargo on behalf of its self-insured STD plan to Lincoln as the insurer of the LTD plan.

37. The Denial relied upon a single medical records review which provided physical restrictions and limitations for Ms. Vidal, but did not mention or address her dysphonia.

38. In reaching the Denial, Lincoln failed to conduct a whole person analysis and improperly disregarded the medical evidence, including Ms. Vidal's treating provider assessments and medical records concerning surgery and therapy for dysphonia.

39. This analysis concluded that based on her physical abilities, Ms. Vidal could work a gainful occupation.

40. Lincoln also failed to consider the effects of the COVID-19 pandemic on Ms. Vidal's ability to seek treatment and have in-person office visits, physical exams, and diagnostic testing.

41. Lincoln abused its discretion and acted in its own best financial interests, depriving Ms. Vidal of a full and fair review in violation of 29 C.F.R. § 2560.503-1.

42. In January of 2023, Ms. Vidal appealed the Denial (the "Appeal"). The Appeal included additional medical records, Ms. Vidal's Social Security Disability file resulting in a successful application for SSDI benefits with a November 16, 2021 date of disability, and Ms. Vidal's personal declaration which included an explanation of her limited ability to speak.

43. Based on the medical evidence in its possession at the time of the Denial, Lincoln should have never terminated Ms. Vidal's LTD claim.

44. The additional medical evidence provided with the Appeal further substantiated Ms. Vidal's Disability under the Plan.

**RONSTADT LAW, PLLC**
P.O. Box 34145, Phoenix, AZ 85067
6122 N. 7th Street, Suite B, Phoenix, AZ 85014
(602) 615-0050

45. Ms. Vidal's conditions are degenerative.

46. On May 24, 2023, Lincoln issued a final administrative determination, terminating Ms. Vidal's LTD benefits (the "Final Denial").

47. In reaching the Final Denial, Lincoln relied heavily on multiple biased and inadequate physician consultant reviews.

48. These physicians had not physically examined or even spoken with Ms. Vidal or her treating providers. Their opinions are based solely on a review of the medical records.

49. In its Final Denial, Lincoln failed to explain why it credited these physician reviewers over Ms. Vidal's treating providers and unreasonably relied on their opinions when it knew or should have known that they conducted inadequate and biased reviews.

50. In its Final Denial, Lincoln failed to mention or explain why Ms. Vidal's vocal impairments were not addressed by any of its in house reviewers.

51. A plan administrator "may not arbitrarily refuse to credit a claimant's reliable evidence, including the opinions of a treating physician." See Black & Decker Disability v. Nord, 538 U.S. 822, 834, 123 S. Ct. 1965, 155 L. Ed. 2d 1034 (2003).

52. Lincoln's reliance on the peer reviewers was an abuse of discretion and contrary to its duty to perform a full and fair review.

53. In the Final Denial, MetLife cites a vocational report by Allison Kramer MS, CRC, who conducted an occupational analysis on Ms. Vidal's claim. The restrictions and limitations given to Ms. Kramer for the report did not include any restrictions on speaking.

54. The Vocational Specialist did not physically examine Ms. Vidal or contact Ms. Vidal with additional questions.

55. The vocational analysis did not give proper weight to the opinions of Ms. Vidal's treating providers and misrepresented Ms. Vidal's physical capabilities.

56. In its Final Denial, Lincoln failed to properly consider Ms. Vidal's treating provider conclusions, restrictions, and limitations.

**RONSTADT LAW, PLLC**
P.O. Box 34145, Phoenix, AZ 85067
6122 N. 7th Street, Suite B, Phoenix, AZ 85014
(602) 615-0050

RONSTADT LAW, PLLC
P.O. Box 34145, Phoenix, AZ 85067
6122 N. 7th Street, Suite B, Phoenix, AZ 85014
(602) 615-0050

57. Ms. Vidal is unable to perform the material duties of her Own Occupation, or Any Occupation for that matter, and therefore, comes within the definition of Disability under the Plan.

58. Ms. Vidal exhausted her administrative remedies and timely filed this lawsuit.

**COUNT I**
**(Recovery of LTD Plan Benefits)**
**(Defendant Lincoln)**

59. All other paragraphs are incorporated by reference.

60. The Plan is an Employee Welfare Benefit Plan as defined in ERISA, 29 U.S.C. § 1002.

61. The Plan is governed by the laws of the State of Minnesota to the extent not preempted by federal law.

62. The Plan represents LTD coverage and a promise to provide these benefits until Ms. Vidal is no longer Disabled under the terms of the Plan.

63. Ms. Vidal is Disabled from her Own Occupation.

64. Ms. Vidal has claimed the benefits under the Plan to which she is entitled.

65. Defendants Lincoln and the Plan wrongfully denied those benefits.

66. Ms. Vidal reasonably expected that her medical conditions met the requirements of Disability as defined by the Plan and that he would receive benefits under the Plan until she reaches age 67, or until she was no longer Disabled.

67. Lincoln and the Plan's collective conduct was arbitrary, capricious, an abuse of discretion, not supported by substantial evidence, and clearly erroneous.

68. Although the LTD Policy states that Lincoln has discretion with respect to determining eligibility and to interpret the Plan, under ERISA, that can only be true if the Plan reserved that discretion to the Plan Administrator. The Plan terms provide a mechanism for the Plan Administrator to delegate that discretion, but there is no evidence that the discretion was delegated in accordance with the terms of the Plan.

69. On information and belief, there is no written Plan document that reserves discretion to the Plan Administrator or contains terms by which discretion can be delegated, and therefore, under ERISA, discretion could not be delegated to Lincoln.

70. Even if Wells Fargo properly delegated discretionary authority to Lincoln, by operation of Minn. Stat. §60A.42, the standard of review applicable to this court's decision concerning Plaintiff's entitlement to LTD benefits is *de novo*.

71. In light of Lincoln's wholesale and flagrant procedural violations of ERISA, Ms. Vidal is also entitled to *de novo* review. See *Halo v. Yale Health Plan*, 819 F.3d 42, 60-61 (2d Cir. 2016) ("when denying a claim for benefits, a plan's failure to comply with the Department of Labor's claims-procedure regulation, 29 C.F.R. § 2560.503-1, will result in that claim being reviewed *de novo* in federal court, unless the plan has otherwise established procedures in full conformity with the regulation and can show that its failure to comply with the claims-procedure regulation in the processing of a particular claim was inadvertent and harmless.")

72. Instead of evaluating a participant's eligibility based on the applicable plan language and medical evidence, Ms. Vidal is informed and believes that Lincoln makes claims decisions based on the claims resources and financial risk it faces on certain claims.

73. Lincoln failed to conduct a full and fair review.

74. Lincoln did not properly consider all of the available evidence when terminating Ms. Vidal's benefits.

75. In reaching its Denial and Final Denial, Lincoln failed to properly consider Ms. Vidal's medical evidence, valid symptomology, and treating provider assessments.

76. Lincoln exclusively relied on medical file reviews provided by in-house medical consultants and non-examining physicians.

77. None of the reviewers considered Ms. Vidal's dysphonia as a limitation.

**RONSTADT LAW, PLLC**
P.O. Box 34145, Phoenix, AZ 85067
6122 N. 7th Street, Suite B, Phoenix, AZ 85014
(602) 615-0050

78. On information and belief, Lincoln used in-house reviewers in evaluating Ms. Vidal's claim because it knew that the in-house reviewers' recommendations would be unfavorable for the continuation of Ms. Vidal's benefits.

79. Lincoln abused its discretion by basing its decision on unreliable and inaccurate information. When confronted with this knowledge, Lincoln continued to rely on these peer reviewers despite their obvious bias and mistakes.

80. On information and belief, Lincoln provides its reviewers and vendors with internal notes and financial information about the claim, compromising their ability to make "independent" medical determinations and creating further bias in reviews.

81. Lincoln routinely emphasizes information that favors a denial of benefits while deemphasizing other information that suggests a contrary conclusion.

82. Lincoln's biased medical consultant mischaracterized evidence to support their conclusions that Ms. Vidal can work.

83. Lincoln failed to properly consider the opinions of Ms. Vidal's treating providers.

84. Lincoln has a history of parsimonious claims handling, which is directly relevant to this Court's analysis of the standard of review, including whether to confer Lincoln with discretionary authority, and it is also relevant to this Court's consideration of Lincoln's procedural violations.

85. Lincoln's ERISA violations were more than de minimis.

86. Lincoln failed to engage in a "meaningful dialogue" regarding Ms. Vidal's claim.

87. Lincoln engaged in procedural irregularities to serve its own financial best interests.

88. On information and belief, Lincoln's motivation in terminating Ms. Vidal's LTD benefits was to eliminate a long-term financial liability.

RONSTADT LAW, PLLC
P.O. Box 34145, Phoenix, AZ 85067
6122 N. 7th Street, Suite B, Phoenix, AZ 85014
(602) 615-0050

RONSTADT LAW, PLLC
P.O. Box 34145, Phoenix, AZ 85067
6122 N. 7th Street, Suite B, Phoenix, AZ 85014
(602) 615-0050

89. Plaintiff is informed and believes that Lincoln continues to experience financial issues as a company, including shortages in its reserves for the payment of claims.

90. Plaintiff is informed and believes that, as a company, Lincoln has increased its efforts to deny otherwise valid claims as a result of its financial considerations.

91. Plaintiff is informed and believes that Lincoln did not set aside adequate reserves to pay Ms. Vidal's claim.

92. On information and belief, Ms. Vidal was a victim of Lincoln's corporate efforts to drive profitability.

93. Under the *de novo* standard of review, to be entitled to benefits, Ms. Vidal need only prove by a preponderance of the evidence that she is Disabled.

94. Even under the abuse of discretion standard of review, Lincoln abused its discretion, because its decision terminating Ms. Vidal's disability benefits was arbitrary and capricious and unduly influenced by Lincoln's financial conflicts of interest. These conflicts of interest precluded the full and fair review required by ERISA, 29 U.S.C. 1133(2) and 29 C.F.R. § 2560.503-1(g)(1) and (h)(2).

95. Ms. Vidal is entitled to discovery regarding the effects of the procedural irregularities and structural conflict of interest that infiltrated the claims handling process and also regarding the effects of Lincoln's reviewing physicians', its employees', and its vendors' financial conflicts of interest, biases, and financial motivations and circumstances surrounding Lincoln's decision to terminate Ms. Vidal's LTD claims.

96. Under the *de novo* standard of review, Ms. Vidal is entitled to discovery regarding, among other things, the credibility of Lincoln's medical reviews and Lincoln's lack of partiality due to its financial conflicts of interest. Opeta v. Nw. Airlines Pension Plan for Contract Employees, 484 F.3d 1211, 1217 (9th Cir. 2007) (under the *de novo* standard of review, new evidence may be admitted regarding, among other things: "the credibility of medical experts… [and] instances where the payor and the administrator are the same entity

and the court is concerned about impartiality" (quoting Quesinberry v. Life Ins. Co. of N. Am., 987 F.2d 1017, 1026-27 (4th Cir. 1993)).

97. Pursuant to the coverage provided in the Plan, to ERISA 29 U.S.C. § 1132(a)(1)(B), and to applicable federal law, Ms. Vidal is entitled to recover all benefits due under the terms of the Plan, and to enforce her rights under the Plan.

98. Ms. Vidal is entitled to reinstatement of any other employee benefits that were terminated, discontinued, or suspended as a result of the termination of her disability benefits. She is entitled to a restoration of the status quo ante before LTD benefits were wrongfully terminated.

99. Ms. Vidal is entitled to prejudgment interest on the benefits to which she is entitled and on her damages at the highest legal rate until paid in full.

100. Pursuant to 29 U.S.C. § 1132(g), Ms. Vidal is entitled to recover her attorneys' fees and costs incurred herein.

WHEREFORE, on all claims, Ms. Vidal asks for entry of judgment against Defendants as set forth in this Complaint, which includes:

A. All past and future LTD benefits under the terms of the Plan;

B. Clarifying and determining Ms. Vidal's rights to future benefits under the terms of the Plan;

C. For any other benefits Ms. Vidal may be entitled to receive under the Plan due to her disability;

D. All other equitable relief that is proper as a result of Lincoln's breaches of fiduciary duties;

E. For an award of Ms. Vidal's attorneys' fees and costs incurred herein under 29 U.S.C. § 1132(g) and A.R.S. §§ 12-341.01 and 12-351;

F. An award of prejudgment interest on benefits and damages at the highest legal rate until paid; and

G. For such and further relief as the Court deems just, equitable, and reasonable.

**RONSTADT LAW, PLLC**
P.O. Box 34145, Phoenix, AZ 85067
6122 N. 7th Street, Suite B, Phoenix, AZ 85014
(602) 615-0050

Dated: October 5, 2023.

RONSTADT LAW, PLLC

By: s/ *Erin Rose Ronstadt*
Erin Rose Ronstadt
Kyle Shelton
*Counsel for Plaintiff*

## CERTIFICATE OF SERVICE

I certify that on October 5, 2023 I electronically transmitted the foregoing to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants and mailed the foregoing to all CM/ECF non-registrants this same date:

Iwana Rademaekers
LAW OFFICES OF IWANA RADEMAEKERS, P.C.
17304 Preston Road, Suite 800
Dallas, Texas 75252
iwana@rademaekerslaw.com

*Attorneys for Defendant*

s/ ______________________

RONSTADT LAW, PLLC
P.O. Box 34145, Phoenix, AZ 85067
6122 N. 7th Street, Suite B, Phoenix, AZ 85014
(602) 615-0050